**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON (SPOKANE)**

| | |
|---|---|
| LARISSA CLARK, an individual, | |
| Plaintiff, | **Case No. _____** |
| v. | |
| WILDFIRE CANNABIS COMPANY, LLC a Washington Company; ROBERT FOSTER, and the community property thereof | **COMPLAINT FOR DAMAGES AND JURY DEMAND** |
| Defendants. | |

Plaintiff Larissa Clark ("Clark" or "Plaintiff"), by and through her undersigned attorneys of record, Gregory M. Skidmore and Damien N Villarreal of Skidmore | Fomina, PLLC, alleges as follows:

## I.  PARTIES

1.1    Plaintiff Larissa Clark is a citizen of the United States and an individual residing in Stevens County, Washington.

1.2    Defendant Wildfire Cannabis Company, LLC is incorporated under the laws of the State of Washington and has its principal offices in Stevens County, Washington, maintains its registered agent in Stevens County, Washington, and transacts business in multiple counties including Stevens County, Washington.

1.3     Robert Foster is a citizen of the United States and an individual residing in Stevens County, Washington.

1.4     During all times relevant, Wildfire and Robert Faster were Plaintiff's employer, or acting directly on behalf of an employer, pursuant to the Washington Law Against Discrimination, RCW 49.60.030(11).

## II.    ADMINISTRATIVE EXHAUSTION

2.1     Plaintiff filed a WAHRC and EEOC charge against Wildfire Cannabis (#38G-2021-00162) for religious discrimination, and the EEOC issued a right to sue letter on April 5, 2021.

## III.    JURISDICTION AND VENUE

3.1     This Court has jurisdiction over the parties because all parties are believed to have resided and/or transacted business in Stevens County, Washington.

3.2     This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 USC § 1331.

3.3     Venue is proper because Defendants reside within Stevens County by transacting business and selling to customers in Stevens County, Washington which is within the district of this court.

## IV.    FACTUAL ALLEGATIONS

4.1     Wildfire Cannabis is in the business of growing and selling marijuana.

4.2     Ms. Clark is a devout Messianic Jew. As part of her religious tradition, Ms. Clark observes the biblical Sabbath from sundown on Friday evening until sundown on Saturday.

4.3     At the time of her interview to become a processer at Wildfire Cannabis in the summer of 2020, Ms. Clark indicated she was available to work from 8 a.m. to 4:30 p.m. and accepted the position.

4.4     Ms. Clark was hired at Wildfire Cannabis on or about July 8, 2020.

4.5     Ms. Clark's duties included trimming flower, making joints, weeding outdoor garden beds, harvesting, hanging plants to dry, and taking down dry rooms. Ms. Clark was to be paid $14.50 hour and worked full time.

4.6     When Ms. Clark exceeded the required hourly trim rate (.34 pounds per hour), she was also to be given a bonus of $6.66 per hour for a total of $21.16 per hour when she trimmed at the hourly rate of .47 pounds per hour.

4.7     In or about October 2020, Ms. Clark's husband brought it to her attention that with her shift ending at 4:30 p.m. and sunset becoming much earlier in the winter months, she would need to consider a change in schedule. Ms. Clark researched sunset times and determined there would be a conflict. Ms. Clark then immediately brought it to Vicki Foster's attention. Ms. Foster was fulfilling the role as Human Resources and payroll at the time.

4.8     On or about October 8, 2020, Ms. Clark asked her immediate supervisor, Joseph Mobley, while on the processing floor for a copy of the Employee Handbook and was informed that the Employee Handbook was the laminated sheets on the back of the main processing room's front door. There was no information on religious accommodations. Ms. Clark also looked for forms or paperwork on how to request an accommodation but found none.

4.9     Ms. Clark asked Ms. Foster on her way out the door for information on requesting religious accommodations and offered to send her a letter explaining the request. Ms. Foster indicated she would like to see it but did not provide a way for Ms. Clark to get her that information.

4.10    Ms. Clark also asked her supervisor Joseph Mobley for Ms. Foster's email address so she could send a formal request. She received no response.

4.11    On or about October 12, 2020 in the morning, Ms. Clark got called in to the owner, Robert Foster's office. Mr. Foster proceeded to tell Ms. Clark what the biblical Sabbath actually was and what she can and cannot do on the Sabbath. Ms. Clark was angry but calmly explained

the basis for her religious beliefs as outlined in Leviticus 23. Mr. Foster then informed her that Washington is an at-will state and that he could terminate her "if I don't like the way you look today." Ms. Clark believed he was specifically referring to the Tichel she was wearing. Mr. Foster reemphasized that she was required to work until 4:30 p.m. on Fridays without exception, that Ms. Clark would not be required to work on Saturdays, and that he had no obligation to accommodate her religious beliefs.

4.12    The following day, Ms. Foster informed Ms. Clark that she should not have talked to Mr. Foster about her request for religious accommodation and accused her of not informing them of her need for accommodation upon hire. Despite multiple meetings with both Mr. and Ms. Foster, no resolution was found on the issue of her working into the Sabbath when the days were shorter.

4.13    On or about November 3, 2020 and with time running out due to daylight savings time on November 1, 2020, Ms. Clark again requested HR's email and received it from her supervisor. That evening Ms. Clark sent the formal request for accommodation asking not to work on the Sabbath. She was merely seeking a slight change in schedule from November 6, 2020 until January 15, 2021.

4.14    Ms. Clark did not receive a response to her request and even though it went against her religious beliefs and caused her a lot of stress and heartache, she went ahead and worked until 4:30 p.m. - past sunset on November 6th. Agonizing over what to do next, Ms. Clark and her husband decided it was more important to adhere to their religious beliefs and decided she would quit after work on Thursday, November 12, 2020 before the next Sabbath.

4.15    On or about November 10, 2020, Ms. Clark learned that another employee had their request for change of schedule granted so they did not have to drive home in the dark.

4.16    Ms. Clark also learned that her family had been directly exposed to someone with COVID-19. Based on Ms. Clark's research of the required state protocols, Ms. Clark was required

to quarantine for 14 days due to COVID-19 exposure. Ms. Clark informed Mr. Foster about this and yet Mr. Foster indicated that she had to come in the next day.

4.17    In lieu of waiting a couple more days, Ms. Clark resigned that same evening. She sent an email indicating, "that due to direct exposure to covid-19 my family will be in quarantine for the next 14 days" and that "the reason I am resigning is due to religious discrimination."

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Religious Discrimination, RCW 49.60 et seq.

5.1    Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.2    Plaintiff is a Messianic Jew and is a member of a protected class.

5.3    Defendants treated Plaintiff differently than members outside of her protected class.

5.4    Plaintiff sought a work accommodation for her religious beliefs.

5.5    Defendants' failure to accommodate her religious beliefs was a substantial factor in Plaintiff's decision to resign.

5.6    Defendant's failure to accommodate her religious beliefs was the proximate cause of Plaintiff's loss of income and other damages to be proven at trial.

### SECOND CAUSE OF ACTION
### Failure to Accommodate
### Washington Law Against Discrimination, RCW 49.60 et seq.
### Title VII, 42 U.S.C. § 2000e *et seq.*

5.7    Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.8    Plaintiff is a Messianic Jew and is a member of a protected class and her religious practices and observances conflicted with employment duties.

5.9   Plaintiff informed Defendants of the belief, practice, or conflict and Defendants were therefore on notice when Plaintiff requested accommodations.

5.10   Defendants failed to accommodate Plaintiff's religious belief, observances, and practices despite being on notice.

5.11   Defendants' accommodation of Plaintiff's religious belief, observances, and practices would not have caused an undue hardship.

5.12   As a result of Defendant's failure to accommodate, Plaintiff has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Retaliation
### Washington Law Against Discrimination, RCW 49.60.210(1)
### Title VII, 42 U.S.C. § 2000e *et seq.*

5.13   Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.14   Plaintiff complained about Defendant's discriminatory and retaliatory treatment based on religion and requested religious accommodations.

5.15   Plaintiff reasonably believed such actions of the Defendant to be unlawful and that requesting religious accommodations is protected conduct.

5.16   Plaintiff's complaints and requests for accommodation were a motivating factor in the decision to not allow Plaintiff time off, treat her differently because of her religious belief, grant other employees time off for specific requests but not to Plaintiff because her requests were based on religious reasons, and the constructive discharge.

5.17    As a direct and proximate cause of defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**WRONGFUL CONSTRUCTIVE DISCHARGE**

5.18    Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.19    Washington State has a strong public policy, evidenced in both Washington statutes and common law, against retaliating against employees who in good faith attempted to abide by and adhere to the Governor's order on COVID-19 safety measure.

5.20    Plaintiff was constructively discharged in part because of her concerns and refusal to break the Governor's order regarding COVID-19 safety measures.

5.21    Defendants made working conditions intolerable for her by failing to accommodate her religious belief.

5.22    A reasonable person in Plaintiff's position would be forced to resign.

5.23    Plaintiff resigned because of the conditions and not for any other reason.

5.24    As a result of Defendants' violations, Plaintiff has been damaged in an amount to be proven at trial.

**VI.    JURY DEMAND**

6.1    Plaintiff requests a trial by jury on all issues so triable.

**VII.    PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays judgment in her favor and for relief as follows:

7.1     Economic damages for unpaid and lost wages, including back pay, front pay or reinstatement, lost benefits, and medical expenses all in an amount to be proven at trial;

7.2     Damages for actual, consequential, and incidental damages as alleged herein or as proven at trial;

7.3     Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

7.4     Prejudgment and post-judgment interest in an amount to be proven at trial;

7.5     Compensation for any tax penalty associated with a recovery;

7.6     Reasonable attorneys' fees and costs pursuant to statute and as otherwise allowed by any claim alleged herein; and

7.7     Any other relief this Court shall deem just and equitable.

DATED this 20th day of May, 2021.

_____
Gregory M. Skidmore, WSBA #47462
Damien N Villarreal, WSBA #50708
*Attorneys for Plaintiff*